**JAMES K. ULWELLING, SBN 173617**
**DANIEL M. JOSEPHSON, SBN 245895**
**ULWELLING | SIDDIQUI LLP**
Park Tower, Suite 700
695 Town Center Drive
Costa Mesa, California  92626
Telephone:  (714) 384-6650
Facsimile: (714) 384-6651
julwelling@usllp.com
djosephson@usllp.com

Attorneys for Plaintiff,
Mark Brown

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MARK BROWN, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>ZATELLA BEATTY, an individual; 214 FILMS, INC., a California Corporation; and DOES 1-20.<br><br>Defendants. | CASE NO.:  2:16-cv-7666<br><br>**COMPLAINT FOR:**<br><br>**(1)   BREACH OF CONTRACT;**<br>**(2)   BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>**(3)   CONVERSION;**<br>**(4)   UNJUST ENRICHMENT;**<br>**(5)   UNFAIR COMPETITION/BUSINESS PRACTICES [PURSUANT TO CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200 et seq.];**<br>**(6)   COPYRIGHT INFRINGEMENT;**<br>**(7)   ACCOUNTING; and**<br>**(8)   DECLARATORY RELIEF.**<br><br>**[DEMAND FOR JURY TRIAL]** |

MARK BROWN ("Plaintiff" or "BROWN") alleges as follows for his complaint against Defondants ZATELLA BEATTY, an individual ("BEATTY"), 214

-1-
**COMPLAINT**

FILMS, INC., a California Corporation ("214 FILMS") and DOES 1 through 20, inclusive, (collectively, "Defendants"):

**NATURE OF DISPUTE**

1. BROWN is a writer and producer of films, namely the "Iverson Project," featuring basketball player Allen Iverson (the "Project"). BROWN purchased the rights to create Iverson's life documentary and hired BEATTY to work as a director on the film.

2. Approximately two years after purchasing the rights, due to economic downturn, BROWN ceased funding of the Project. The rights to Iverson's life documentary continued to be owned by BROWN. BEATTY continued working on the Project. The source of funding to continue the Project is presently unknown.

3. In approximately 2014, to BROWN's surprise, BEATTY, as the purported president of 214 FILMS, signed a "Deal Memo" with a large distribution channel, Showtime Networks, Inc. ("Showtime"), to air the Iverson Project (the "Deal"). BROWN did not learn of the Deal until he saw the film air on Showtime's premium television cable channel.

4. BROWN did not give BEATTY or 214 FILMS permission to sell the rights to Showtime Networks, Inc., nor did he ever assign BEATTY or 214 FILMS the rights to Iverson's life documentary.

5. By this complaint, BROWN, *inter alia*, seeks to: a) gain an accounting from BEATTY and 214 FILMS (with respect to the sale proceeds from the Deal); b) prevent deception, consumer confusion, and mistake, by ensuring BROWN receives proper production and ownership credit for the Project; and 3) protect BROWN's intellectual property and reputation from intentional infringement and further related economic loss.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over this action under 15 U.S.C. § 1121, 28 U.S.C. § 1338, and 28 U.S.C. § 1331 in that this Complaint raises federal questions under the 17 U.S.C. § 501 et seq. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

7. The Court has personal jurisdiction over the Defendants because the Defendants have engaged in business activities in, and directed to, the State of California and have committed tortious acts within such state. The oral agreement between BROWN and BEATTY was entered into in California. Defendants have purposefully availed themselves of the opportunity to conduct commercial activities in this forum, and this Complaint arises out of those activities.

8. Venue is proper in this district under 28 U.S.C. § 1391 (b) and (c) in that substantial injury occurred, and continues to occur in this district, a substantial number of the events on which the claims in this Complaint are based took place in this district, the applicable oral agreement breached by Defendant BEATTY was entered into in Los Angeles County (the County embraced by this district), and Defendants BEATTY and 214 FILMS, INC. are subject to personal jurisdiction in this district, as BEATTY is believed to be domiciled Los Angeles County and 214 FILMS, INC.'s principal place of business is in Los Angeles County.

## PARTIES

9. Plaintiff MARK BROWN is, and at all times relevant hereto was, an individual residing in the County of Los Angeles, California.

10. Defendant ZATELLA BEATTY is, and at all times relevant hereto, was an individual residing in the County of Los Angeles, California.

11. Defendant 214 FILMS, INC. is, and at all times relevant hereto was, a California corporation with its principal place of business in the County of Los

Angeles, California. On information and belief, 214 FILMS, INC. is a film and television production company.

12. Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as Does 1 through 10, inclusive, and therefore sue these Defendants by such fictitious names. Each and every reference to any Defendant or combination of Defendants shall be taken to include the Doe Defendants and each of them, so as to allow Plaintiff to hereafter seek leave of Court to amend this complaint in order to allege the true names and capacities of said Defendants when ascertained. Plaintiff is informed and believes, and based upon such information and belief, alleges that each of the fictitiously named Defendants is responsible and undertook the obligations and duties herein alleged, and that Plaintiff's damages, as hereinafter alleged, were the result of the failures, acts and omissions, as hereinafter alleged, by each such Defendant.

13. Plaintiff is informed and believes, and based upon such information and belief, alleges that at all times herein mentioned, Defendants, and each of them, were the agents and/or employees and servants and/or representatives of each of the other Defendants, and each of them, and that Defendants BEATTY and 214 FILMS, INC. as well as Defendants Does 1 through 20, inclusive, were acting within the purpose, course and scope of said agency, service, employment or representation, and in doing the things herein alleged, were acting with the permission and consent of the other Defendants, and further, that each of the Defendants is jointly and severally liable for the nonfeasance, misfeasance, malfeasance of all remaining Defendants. Whenever appearing in this Complaint, each and every reference to Defendants, or to any of them, is intended to be and shall be in reference to all Defendants herein, and to each of them, both named and unnamed, including all fictitiously named Defendants.

///

///

## ALTER EGO ALLEGATIONS

14. Plaintiff is informed and believes, and based upon such information and belief, allege that, at all times herein mentioned, Defendants BEATTY and 214 FILMS, INC. and Does 1 to 20, inclusive, are really the alter ego of the other, and each is operated, controlled and maintained by the other, so that any separateness of identity ceases to exist and each acted with the permission and consent of the other.

15. Plaintiff is informed and believes, and based upon such information and belief, allege that, at all times herein mentioned, Defendant 214 FILMS, INC. holds itself out as a corporation.

16. Plaintiff is informed and believes, and based upon such information and belief, alleges that, at all times herein mentioned, there existed such a unity of interest and ownership between Defendants BEATTY and 214 FILMS, INC. that, if a separate existence of them is recognized, an inequitable result would follow.

17. Plaintiff is informed and believes, and based upon such information and belief, alleges that, at all times herein mentioned, Defendants BEATTY and 214 FILMS, INC. have commingled corporate funds and other assets with personal funds and other assets for her own convenience and to assist in evading the payment of obligations.

18. Plaintiff is informed and believes, and based upon such information and belief, alleges that, at all times herein mentioned, Defendant BEATTY has treated the assets of Defendant 214 FILMS, INC. as if they were her own.

19. Plaintiff is informed and believes, and based upon such information and belief, alleges that, at all times herein mentioned, Defendant 214 FILMS, INC. was not adequately capitalized for the business purposes for which it was formed, if it was formed for any legitimate business purpose at all.

20. Plaintiff is informed and believes, and based upon such information and belief, alleges that, at all times herein mentioned, Defendant BEATTY used the 214

FILMS, INC. corporate entity to procure labor, services, or merchandise for herself, as an individual.

21. Plaintiff is informed and believes, and based upon such information and belief, alleges that, at all times herein mentioned, Defendant BEATTY used the 214 FILMS, INC. corporate entity as a mere shell, instrumentality, or conduit for her own illegal activities as alleged in this complaint, and although Defendant BEATTY and Defendant 214 FILMS, INC. purport to be two distinct entities, there is but one enterprise, and this enterprise has been so handled that it should be liable, as a whole, for the obligations of its component entities.

22. Plaintiff is informed and believes, and based upon such information and belief, alleges that, at all times herein mentioned, Defendant BEATTY has failed to maintain corporate formalities with respect to 214 FILMS, INC.

23. Plaintiff is informed and believes, and based upon such information and belief, alleges that, at all times herein mentioned, Defendant BEATTY and Defendant 214 FILMS, INC. use the same work space and/or business location(s) and engage the same professionals, such as attorneys.

24. On information and belief, the separate acts and omissions of each of the Defendants, as set forth herein, were done intentionally and pursuant to a common plan and design to injure Plaintiff. As a result of this civil conspiracy, each of the Defendants should be held separately liable and responsible for the entirety of Plaintiff's damages.

## FACTUAL BACKGROUND

25. BROWN is a well-known, well-respected writer, producer, and director in the entertainment industry. BROWN is most recognized for his role as writer and producer of the following motion pictures: the *Barbershop* franchise, *Two Can Play That Game*, *How to Be a Player*, and *The Salon*. Additionally, BROWN was the director of *Two Can Play That Game* and *The Salon*.

26. BEATTY and BROWN met while BEATTY was pursuing a career in acting. In or around 1997, BEATTY and BROWN entered into an oral agreement by which BEATTY would work as a film production assistant for BROWN. BEATTY assisted BROWN with the films *Two Can Play That Game* and *The Salon*. At that time, BEATTY had no prior directing experience and is not known to have had any writing or production development experience.

27. In or around 2006, BROWN forwarded a proposal to Gary Moore ("Moore"), National Basketball Association ("NBA") player Allen Iverson's ("Iverson") agent, for the rights to the create Iverson's life documentary (as defined above, the "Project").

28. In or around June 2007, Moore approved BROWN's proposal and entered into an agreement giving BROWN the rights to the Project. BROWN paid a total of approximately $50,000 to purchase the rights to the Project. BEATTY expressed interested in directing and BROWN agreed to allow BEATTY to direct Iverson's life documentary. BROWN was to be the producer on the Project and receive credit as such. This arrangement was not uncommon for BROWN. In the past, BROWN had completed approximately 10 similar projects for which the rights were owned by BROWN and his business (at the time), C4 Pictures. On each of these 10 projects, BROWN hired a directing, editing, and production team.

29. In or around 2007, BROWN began principal production (filming) of the Project. BROWN rented camera equipment and flew to several locations where Iverson was located and completed a number of interviews on various topics. BROWN spent approximately $170,000 in production costs, which included hotels, food, and transportation fees.

30. In or around 2008, due to unforeseen economic circumstances, BROWN ceased funding the Project. This was partially due to the difficulty BROWN was experiencing with Iverson's schedule. Often times, BROWN would fly out to a

location to interview Iverson and Iverson would suddenly and unexpectedly become unavailable. At that time, the raw material of the Project was approximately 85% edited, but still required a few finishing touches, such as soundtrack music. In light of BROWN's significant downsizing, BEATTY and BROWN amicably parted ways. BROWN is unaware if BEATTY or any other member of the production crew took over funding.

31. From approximately 2008 to 2015, BROWN was forced to downsize his production company and move his offices to a different, lower-cost location. During such time, BEATTY maintained, possessed and preserved the raw material for the Project.

32. On or about October 16, 2014, unbeknownst to BROWN, BEATTY signed a Deal Memo Agreement with Showtime Networks, Inc. ("Showtime") on behalf of her corporation, 214 Films Entertainment Group, Inc. ("214") for a license to air the Project on Showtime Network (as defined above, the "Deal"). A true and correct copy of the Deal Memo Agreement is attached hereto as **Exhibit "A."** BEATTY signed the Deal Memo Agreement as the president of 214. Showtime's license period was to begin on May 1, 2015 and end on April 30, 2017. Showtime paid BEATTY and 214 approximately $325,000 for the license.

33. Most concerning, as part of the Deal, BEATTY and 214, as licensors, represented and warranted that 214 "has all the rights and authority necessary to enter into [the] Agreement…." (See **Exhibit A,** 7:11:i.) BEATTY and 214 further represented that, "to the best of Licensor's knowledge, nothing contained in the Picture, nor the entering into or performing of this Agreement…will infringe upon any rights whatsoever…of any third persons or entities…" These statements were, in fact, knowingly and completely false, as BROWN, not BEATTY or 214, owned all intellectual property rights to the Project.

34. On or about May 16, 2015, BROWN learned that the Project was airing

-8-
**COMPLAINT**

on Showtime. Shocked, BROWN called BEATTY. BEATTY told BROWN that she "meant to tell him" about the Deal, but she had decided she "wanted to surprise him." The Parties came to a preliminary agreement in which BROWN would receive a "good faith" $25,000 down payment on a minimum payment of $85,000 that was due to BROWN along with certain equity interests (the "Preliminary Agreement"). A true and correct copy of the preliminary agreement between BROWN and BEATTY is attached hereto as **Exhibit "B."**

35. To date, despite his investment of substantial time, effort and money, BROWN has received no compensation and no credit whatsoever for his labors.

## **FIRST CLAIM FOR RELIEF**
## **BREACH OF CONTRACT**
### **(Against Defendant BEATTY)**

36. Plaintiff realleges paragraphs 1 through 35 above and incorporates them by this reference as though fully set forth herein.

37. In or about 2006, Defendant BEATTY entered into an oral agreement with Plaintiff BROWN whereby BROWN would continue to own the rights to the Project and BEATTY would perform as a director on the Project (the "Verbal Agreement"). BEATTY was to receive credit as the Project's director and also receive monetary compensation. An essential term of the Verbal Agreement was that BEATTY would not assert any ownership rights over the Project upon completion. The Verbal Agreement was supported by adequate consideration and the essential terms were known to all parties.

38. Plaintiff BROWN performed his obligations pursuant to the terms and conditions of the Verbal Agreement.

39. Defendant BEATTY materially breached the Verbal Agreement by entering into the Deal, at which time she knowingly misrepresented her ownership

rights to the Project so that the Deal could be consummated. Defendant BEATTY, without any authorization from BROWN, the Project owner, sold Showtime a license to air the Project.

40. Plaintiff BROWN is informed and believes that, without compensating Plaintiff, Defendant BEATTY has garnered significant benefit from the Deal, including, but not limited to the $325,000 Defendant received as consideration for same.

41. As a direct and proximate result of the above-described breaches of the Verbal Agreement by Defendant BEATTY, Plaintiff BROWN has sustained substantial damages, the exact nature and full extent of which have yet to be ascertained, in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment against Defendant as set forth below.

## SECOND CLAIM FOR RELIEF
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against Defendant BEATTY)

42. Plaintiff realleges paragraphs 1 through 41 above and incorporates them by this reference as though fully set forth herein.

43. Every contract contains an implied covenant of good faith and fair dealing that neither party will do anything which will deprive the other party of the benefits of the contract and that each party will do everything the contract presupposes that party will do to accomplish its purpose.

44. The Verbal Agreement contained no express provision contrary to the implied covenant of good faith and fair dealing.

45. In doing the acts described herein, Defendants, and each of them,

breached the covenant of good faith and fair dealing implied in the Verbal Agreement.

46. As a proximate result of Defendant's material breaches of the implied covenant of good faith and fair dealing, Plaintiff has sustained substantial damages, the exact nature and full extent of which have yet to be ascertained, in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment against Defendant as set forth below.

### THIRD CLAIM FOR RELIEF
### CONVERSION
### (Against All Defendants)

47. Plaintiff realleges paragraphs 1 through 46 above and incorporates them by this reference as though fully set forth herein.

48. Plaintiff BROWN had, and continues to have, exclusive rights of possession and ownership over the Project.

49. Defendant BEATTY hijacked control and ownership over the Project by signing the Deal Memo Agreement with Showtime for a license to air the Project without the consent of Plaintiff BROWN, thereby converting the Project for her own benefit and gain.

50. Plaintiff BROWN suffered substantial harm as a direct and proximate result of this conduct by Defendant. Defendant's tortious conduct is ongoing.

51. As a direct and proximate result of Defendant's unlawful and wrongful exercise of dominion as described herein, Plaintiff BROWN has been damaged, in a sum to be determined at trial.

52. Plaintiff BROWN is entitled to the imposition of a constructive trust on the converted Project and its fruits and is entitled to an accounting, including,

1 without limitation, the tracing of funds, with respect to the converted Project.

2 53. Plaintiff is further entitled to the imposition of an equitable lien on the
3 converted Project and its fruits.

4 54. In converting the Project as described hereinabove, Defendant acted
5 with oppression, fraud and malice, and with conscious disregard for the rights of
6 Plaintiff BROWN. Pursuant to California Civil Code section 3294, Defendant's
7 conduct is subject to the imposition of punitive and/or exemplary damages.

8 WHEREFORE, Plaintiff prays for judgment as set forth below.

## FOURTH CLAIM FOR RELIEF
### UNJUST ENRICHMENT
### (Against All Defendants)

55. Plaintiff realleges paragraphs 1 through 54 above and incorporates them by this reference as though fully set forth herein.

56. Plaintiff is informed and believes that Defendants have received benefits resulting from their unauthorized use of the Project.

57. Defendants received and unjustly retained these benefits at Plaintiff's expense.

58. As a direct, substantial and proximate result of their aforementioned acts, Defendants have been unjustly enriched in an amount subject to proof.

WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

///
///
///
///
///

## FIFTH CLAIM FOR RELIEF

## UNFAIR COMPETITION/BUSINESS PRACTICES

**[Pursuant to California Business & Professions Code §§ 17200 et seq.]**

**(Against All Defendants)**

59. Plaintiff realleges paragraphs 1 through 58 above and incorporates them by this reference as though fully set forth herein.

60. Defendants have engaged in unlawful, unfair and fraudulent business practices, as described in detail herein. These practices include, but are not limited to, breach of the Verbal Agreement, breach of the covenant of good faith and fair dealing implied in such agreement, conversion, misappropriation, and copyright infringement.

61. Defendants' conduct significantly threatens and harms competition in that Plaintiff has spent significant time, effort and money on the Project. Defendants' conduct, as stated herein, has significantly impaired the ability of Plaintiff to engage in any licensing agreements with prospective networks and has impaired the ability of Plaintiff to sell or otherwise alienate any of his rights to the Project.

62. Each of the acts herein alleged constitutes unlawful, unfair, and fraudulent business practices as defined by sections 17200, et seq. of the *California Business and Professions Code*.

63. Defendants performed these acts to advance their own pecuniary interest and to injure Plaintiff.

64. Defendants' unlawful, unfair and fraudulent practices have caused great and irreparable injury to Plaintiff.

65. Plaintiff has no adequate remedy at law for the injuries currently being suffered and which Plaintiff will further suffer if Defendants continue these unlawful, unfair, and fraudulent practices in the absence of injunctive relief.

WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

# SIXTH CLAIM FOR RELIEF

## COPYRIGHT INFRINGEMENT

### (Against All Defendants)

66. Plaintiff realleges paragraphs 1 through 65 above and incorporates them by this reference as though fully set forth herein.

67. As alleged herein, in or about 2007, Plaintiff BROWN created the Project, an original works of authorship, which is copyrightable subject matter. At all times relevant to this action since 2007, Plaintiff has held, and continues to hold, an exclusive license to use the Project.

68. Following his discovery of a competing registration for copyright filed by Defendants and their agents, Plaintiff is presently in the process of registering the Project with the Register of Copyrights.

69. In or about 2014, Defendants began producing and selling (i.e., distributing) a substantially similar version of the Project, on behalf of themselves.

70. At no time did BROWN authorize any of Defendants reproduce, adapt, or distribute the Project, or any substantially similar version thereof.

71. By reason of the Defendants' infringement, Plaintiff has sustained and will continue to sustain substantial injury, loss, and damage to his rights in the copyrighted work.

72. Further irreparable harm to Plaintiff is imminent as a result of Defendants' conduct, and Plaintiff is without an adequate remedy at law. Plaintiff is entitled to an injunction restraining Defendants, their agents, employees, representatives, and all persons acting in concert with them from engaging in further acts of copyright infringement.

73. Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' acts of copyright infringement. Plaintiff is at present unable to ascertain the full extent of the monetary damage he has suffered by

reason of the Defendants' acts of copyright infringement, but Plaintiff is informed and believes, and on the basis of such information and belief alleges, that he has sustained such damage in an amount exceeding $325,000.

74. Plaintiff is further entitled to recover from Defendants the gains, profits, and advantages they have obtained as a result of their acts of copyright infringement. Plaintiff is at present unable to ascertain the full extent of the gains, profits, and advantages Defendants obtained by reason of their acts of copyright infringement, but Plaintiff is informed and believes, and on the basis of such information and belief alleges, that Defendants have obtained such gains, profits, and advantages in an amount exceeding $325,000.

WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

## SEVENTH CLAIM FOR RELIEF
## AN ACCOUNTING
### (Against All Defendants)

75. Plaintiff realleges paragraphs 1 through 74 above and incorporates them by this reference as though fully set forth herein.

76. Defendants have failed to account for profits received as a result of the sale and distribution of the Project and for any and all monies which were improperly obtained from the Deal. The amount of money owing to Plaintiff cannot be ascertained without a full accounting and itemization of the profits and monies received from use of the Project. Defendants should thus be required to provide a full and complete accounting thereof.

77. Plaintiff requires an accounting to determine the exact amount of damages arising from Defendants' wrongful conduct and unauthorized use of the Project. Defendants should thus be required to provide a full and complete account.

WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

### EIGHTH CLAIM FOR RELIEF
### DECLARATORY RELIEF
### (Against All Defendants)

78. Plaintiff realleges paragraphs 1 through 77 above and incorporates them by this reference as though fully set forth herein.

79. An actual controversy has arisen and now exists between Plaintiff and Defendants concerning their respective rights and duties arising out of the business relationship between Plaintiff and Defendants.

80. Plaintiff contends that Defendants do not have any right to use, sell, alienate or enter into a licensing agreement with respect to the Project as all ownership rights to the Project belong to Plaintiff.

81. Plaintiff seeks a judicial declaration and determination that it be adjudged that Defendants, their agent, servants, employees, and attorneys and anyone acting in concert with them, have no right to use, sell, or enter into any licensing agreements with respect to the Project and have no intellectual property rights in the Project superior to those of BROWN.

82. Plaintiff further seeks a judicial declaration and determination that Defendants have no right to any ownership interest in the Project;

WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment as follows:

///

**As to the First Cause of Action:**

1. For general damages, according to proof;
2. For consequential damages in the amount representing immediate, proximate and foreseeable losses to Plaintiff that arose as a consequence of Defendants' breach of agreement, according to proof;
3. Injunctive relief;
4. Lost profits, according to proof;
5. For costs of suit herein, including prejudgment interest; and
6. For any other relief that the Court deems proper.

**As to the Second Cause of Action:**

1. For general damages according to proof;
2. For cost of suit herein including pre-judgment interest; and
3. For any such other and further relief as the Court deems proper.

**As to the Third Cause of Action:**

1. For general damages according to proof;
2. For punitive and exemplary damages according to proof;
3. Cost of suit herein including pre-judgment interest; and
4. For any such other and further relief as the Court deems proper.

**As to the Fourth Cause of Action:**

1. For general damages according to proof;
2. For imposition of a constructive trust;
3. For restitution;
4. For an equitable lien;
5. For injunctive relief;
6. For cost of suit herein including pre-judgment interest; and
7. For any such other and further relief the Court deems proper.

///

**As to the Fifth Cause of Action:**

1. For restoration of property acquired by unfair or unlawful business practices, according to proof;
2. For injunctive relief;
3. For reasonable attorney fees incurred herein;
4. For cost of suit herein including pre-judgment interest; and
5. For any such other and further relief the Court deems proper.

**As to the Sixth Cause of Action:**

1. For a temporary restraining order, preliminary and permanent injunction enjoining and restraining Defendants and all persons acting in concert with them from manufacturing, reproducing, displaying, distributing, or publishing any materials that are substantially similar to the copyrighted work, the Project, and to deliver to the Court for destruction or other reasonable disposition all such materials and means for producing the same in Defendant's possession or control.
2. For actual damages and Defendants' profits in an amount according to proof in excess of $325,000, plus interest.
3. For punitive and/or exemplary damages according to proof.
4. For statutory damages, in the alternative, as provided under 17 USC § 504(c).
5. For additional damages, as provided under 17 USC § 504(d).
6. For reasonable attorney fees incurred herein;
7. For cost of suit herein including pre-judgment interest; and
8. For any such other and further relief the Court deems proper.

**As to the Seventh Cause of Action:**

1. For an order of this Court requiring Defendants to provide an accounting;
2. For reasonable attorney fees incurred herein;

3. Cost of suit herein including pre-judgment interest; and

4. For any such other and further relief the Court deems just and proper.

**As to the Eighth Cause of Action:**

1. For injunctive relief;

2. For a Court order, declaring that Defendants can no longer use, sell, alienate or enter into any licensing agreement with respect to the Project;

3. For a judicial declaration and determination that it be adjudged that Defendants have no right to an ownership interest in the Project;

4. For an accounting;

5. For cost of suit herein, including pre-judgment interest; and

6. For any such other and further relief as the Court deems proper.

Respectfully submitted,

Dated: October 14, 2016                 **ULWELLING | SIDDIQUI LLP**

By: ___/s/ James K. Ulwelling_____
     **JAMES K. ULWELLING**
     **DANIEL M. JOSEPHSON**
     Attorney for Plaintiff,
     **MARK BROWN**

# **DEMAND FOR JURY TRIAL**

Plaintiff MARK BROWN hereby enters a demand for a jury trial in this case.

Respectfully submitted,

DATED: October 14, 2016        **ULWELLING | SIDDIQUI LLP**


By: ___/s/James K. Ulwelling_____
**JAMES K. ULWELLING**
**DANIEL M. JOSEPHSON**
Attorney for Plaintiffs,
**MARK BROWN**

-1-
**DEMAND FOR JURY TRIAL**