UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-7666 PA (GJSx) | Date | November 9, 2017 |
|---|---|---|---|
| Title | Mark Brown v. Zatella Beatty, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Kamilla Sali-Suleyman | | Not Reported | N/A |
| Deputy Clerk | | Court Reporter | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: | |
| None | | None | |

**Proceedings:**   IN CHAMBERS – COURT ORDER

Before the Court is a Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment filed by defendants 214 Films Entertainment Group, Inc. ("214 Films") and Zatella Beatty ("Beatty," and with 214 Films, "Defendants"). (Docket No. 50.) Plaintiff Mark Brown ("Plaintiff") has filed an opposition. (Docket No. 55.) Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument. The hearing calendared for November 13, 2017, is vacated, and the matter taken off calendar.

**I.      Background**

Plaintiff is a film writer, producer, and director. (Brown Decl. ¶ 2, Docket No. 57.) Beatty worked for Plaintiff from 1997 to 2008 as a personal assistant and as a production assistant on various projects. (Brown Decl. ¶ 3.) Beatty now has her own production company, 214 Films. (Beatty Decl. ¶ 15, Docket No. 50-2.)

This case revolves around a documentary film about former professional basketball player Allen Iverson. In 2005, Plaintiff entered into an agreement with Iverson's management team to produce a documentary about Iverson's life. (Beatty Decl. ¶ 7; Brown Decl. ¶ 19; see Beatty Decl. Ex. A; Brown Decl. Ex. 12.) Plaintiff produced the film and Beatty at least directed it; the parties dispute whether Beatty also was a producer. (Beatty Decl. ¶¶ 1, 8; Brown Decl. ¶¶ 24-25.) In 2008, Plaintiff ceased work on the project. (Brown Decl. ¶ 36; see Beatty Decl. ¶ 13.) According to Plaintiff, 90% of the film had been shot and edited at that time. (Brown Decl. ¶ 42; see also id. ¶¶ 41, 44, 46.) Beatty disagrees, asserting that 90% of the footage appearing in the later-completed documentary was filmed after Plaintiff's involvement ended. (Beatty Decl. ¶ 14.) In any event, Beatty continued to work on the project after 2008, completing in 2014 the film that is now entitled Iverson. (Id. ¶¶ 1, 14; Brown Decl. ¶¶ 38, 41.) In October 2014, 214 Films licensed Iverson to Showtime Networks, Inc. ("Showtime") to air on television from May 1, 2015 to April 30, 2017. (Beatty Decl. ¶ 15; Beatty Decl. Ex. B.)

Plaintiff first learned of the completed film when he saw it on Showtime. (Brown Decl. ¶ 40; see Beatty Decl. ¶ 17.) Plaintiff called Beatty and accused her of stealing his film. (Beatty Decl. ¶ 17; Brown Decl. ¶ 50.) The parties attempted to resolve the matter, resulting in a single-page, handwritten

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-7666 PA (GJSx) | Date | November 9, 2017 |
|---|---|---|---|
| Title | Mark Brown v. Zatella Beatty, et al. | | |

agreement between Plaintiff, Beatty, and Ted Faye, another producer on the project (the "Agreement"). (Beatty Decl. ¶ 18; Brown Decl. ¶¶ 52-53.) The Agreement reads as follows:

> We agree to the following:
>
> (1) No discussion with Showtime now and forever.
>
> (2) No discussion with Mike Tollin now and forever.
>
> (3) Rights released upon good faith negotiations to come to an agreement for Brown to convey the rights to 214.
>
> (4) $25,000 shall be a down payment on the minimum payment of $85,000 that shall be due to Brown.
>
> (5) All terms in this agreement inclusive of points one and 2 above are pursuant to an active working contract dated May 20, 2015 and May 25, 2015.

(Beatty Decl. Ex. D; Brown Decl. Ex. 20.)

Beatty paid Plaintiff only the initial $25,000 down payment under the Agreement. (Beatty Decl. ¶ 18; Brown Decl. ¶ 54.) Beatty asserts that Plaintiff never made a demand for the remainder of the money prior to filing this lawsuit. (Beatty Decl. ¶ 18.) The parties agree that the Agreement does not provide a deadline for payment (Id. ¶ 18; Brown Decl. ¶ 54), although Plaintiff believed he would be paid prior to the expiration of the Showtime license (Brown Decl. ¶ 54).

Plaintiff filed his original complaint on October 14, 2016. (Docket No. 1.) On October 4, 2017, Plaintiff contacted Tollin, apparently seeking to settle this action. (Beatty Decl. ¶ 21; Brown Decl. ¶ 56.)

The operative First Amended Complaint ("FAC") alleges claims for (1) copyright infringement; (2) conversion; (3) unjust enrichment; (4) unfair competition or business practices; (5) breach of written contract; (6) breach of the implied covenant of good faith and fair dealing; (7) promissory estoppel; (8) accounting; and (9) declaratory relief. (Docket No. 14.) Defendants seek summary judgment on all claims except the accounting claim and also request, in the alternative, that the Court decline supplemental jurisdiction over all other claims if it grants judgment in their favor on the copyright claim.

## II.   Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-7666 PA (GJSx) | Date | November 9, 2017 |
|---|---|---|---|
| Title | Mark Brown v. Zatella Beatty, et al. | | |

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986). "[T]he burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986); see Musick v. Burke, 913 F.2d 1390, 1394 (9th Cir. 1990). The moving party must affirmatively show the absence of such evidence in the record, either by deposition testimony, the inadequacy of documentary evidence, or by any other form of admissible evidence. See Celotex, 477 U.S. at 322. The moving party has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. See id. at 325.

As required on a motion for summary judgment, the facts are construed "in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). However, the nonmoving party's allegation that factual disputes persist between the parties will not automatically defeat an otherwise properly supported motion for summary judgment. See Fed. R. Civ. P. 56(c). A "mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" Fazio v. City & County of San Francisco, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting Anderson, 477 U.S. at 249, 252). Otherwise, summary judgment shall be entered.

**III.     Discussion**

    **A.     Plaintiff's Procedural Objections**

As a preliminary matter, Plaintiff raises two procedural issues. First, Plaintiff argues that "Defendants failed to provide adequate notice of the instant Motion for Summary Judgment, having provided Plaintiff with the bare minimum of 28 days' notice, contrary to the Scheduling Order . . . . Plaintiff Brown was provided only six full days to file this opposition. In addition to its failings on the merits, the Motion should also be denied for failure to comply with Local Rules as it is untimely." (Opp'n at 2.) As Plaintiff points out, the Court's Civil Trial Scheduling Order states that the Court generally expects parties moving for summary judgment to provide more than the minimum notice. (Docket No. 39 at 2, 5.) However, the Order does not state that failure to provide more than the minimum notice is a ground for denial of a motion. Further, Plaintiff has not explained how the notice that he was given impeded his ability to obtain essential evidence or prepare his opposition. Although Defendants' short notice is unfortunate, it does not merit the relief Plaintiff seeks.

Second, Plaintiff objects to Defendants' use in their reply of new arguments and evidence, specifically passages of Plaintiff's deposition, which was taken after Plaintiff filed his opposition. (See Docket No. 59 at 2-3.) "Where new evidence is presented in a reply, [a court] should either not consider the new evidence[] or . . . giv[e] the other party the opportunity to respond." Zkey Invs., LLC v. Facebook Inc., 225 F. Supp. 3d 1147, 1158 (C.D. Cal. 2016) (citing Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996)). "Evidence submitted in direct response to evidence raised in the opposition,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-7666 PA (GJSx) | Date | November 9, 2017 |
|---|---|---|---|
| Title | Mark Brown v. Zatella Beatty, et al. | | |

however, is not 'new.'" In re ConAgra Foods, Inc., 90 F. Supp. 3d 919, 955 (C.D. Cal. 2015) (citing Terrell v. Contra Costa Cnty., 232 F. App'x 626, 629 n.2 (9th Cir. 2007); Edwards v. Toys "R" Us, 527 F. Supp. 2d 1197, 1205 n.31 (C.D. Cal. 2007)). Here, Defendants' "new" evidence largely responds to arguments and evidence in Plaintiff's opposition. Much of the deposition testimony came in response to questioning about Plaintiff's declaration and its exhibits. (See Schilken Suppl. Decl. Ex. A, Docket No. 58-1.) To the extent the reply raises new evidence and arguments, the Court will not consider it.

**B.     Copyright Infringement**

Direct copyright infringement has two elements: (1) ownership of the allegedly infringed material, and (2) violation of at least one exclusive right granted to copyright holders under 17 U.S.C. § 106. A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1013 (9th Cir. 2001); see 17 U.S.C. § 501(a). However, "[a] co-owner of a copyright cannot be liable to another co-owner for infringement of the copyright. Rather, each co-owner has an independent right to use or license the use of the copyright." Oddo v. Ries, 743 F.2d 630, 632-33 (9th Cir. 1983) (citations omitted).

Defendants do not dispute that Plaintiff contributed to the Iverson project. (See Mot. at 1.) They do not argue that Plaintiff lacks a copyright in those contributions or that Iverson does not use Plaintiff's work. Rather, Defendants argue that Beatty is a co-owner of the copyright. Specifically, Defendants argue that Iverson "is either an authorized derivative of the 2008 material which Beatty as co-author and co-owner could impliedly license to Defendant 214 Films, or alternatively, [Iverson] could be treated as a co-authored work between Brown, Beatty and/or 214 Films." (Id. at 1.) In either event, Defendants are entitled to summary judgment only if they establish that Beatty was a co-author and co-owner prior to Plaintiff's departure from the project in 2008; otherwise, Beatty's completion and licensing of Iverson infringe Plaintiff's rights. See 17 U.S.C. §§ 103, 106; see also U.S. Auto Parts Network, Inc. v. Parts Geek, LLC, 692 F.3d 1009, 1016 (9th Cir. 2012) ("[A] derivative author may own the copyright in material the author contributed to a preexisting work, but not in infringing material or material the author did not create.").

1.     Copyright Ownership

"Copyright in a work . . . vests initially in the author or authors of the work. The authors of a joint work are coowners of copyright in the work." 17 U.S.C. § 201(a). "A 'joint work' is a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. "[A]uthorship is required under the statutory definition of a joint work, and that authorship is not the same thing as making a valuable and copyrightable contribution." Aalmuhammed v. Lee, 202 F.3d 1227, 1232 (9th Cir. 2000). The Ninth Circuit has identified three factors "among the criteria for joint authorship, in the absence of contract. First, an author superintends the work by exercising control. This will likely be a person who has actually formed the picture by putting the persons in position, and arranging the place where the people are to be . . . or the inventive or master mind who creates, or gives effect to the idea. Second, putative coauthors make objective manifestations of a shared intent to be coauthors . . . . Third, the audience

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-7666 PA (GJSx) | Date | November 9, 2017 |
|---|---|---|---|
| Title | Mark Brown v. Zatella Beatty, et al. | | |

appeal of the work turns on both contributions and the share of each in its success cannot be appraised. Control in many cases will be the most important factor." Id. at 1234 (footnotes omitted) (alteration omitted) (internal quotation marks omitted).

Copyright ownership does not always vest in the author of a work. "In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright." 17 U.S.C. § 201(b). A work made for hire is defined to include "a work prepared by an employee within the scope of his or her employment." 17 U.S.C. § 101.[1/] "In determining whether a hired party is an employee . . . [courts] consider the hiring party's right to control the manner and means by which the product is accomplished." Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 751, 109 S. Ct. 2166, 104 L. Ed. 2d 811 (1989). Various factors, none of which is determinative, are considered, including: "the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party." Id. at 751-52 (footnotes omitted).

      2.     Analysis

Defendants argue that Beatty is a co-owner of the copyright in the Iverson project because she made copyrightable contributions as a director and her contributions were not a work for hire. (Mot. at 8-12.) Defendants point to a 2014 copyright registration for Iverson as prima facie evidence of Beatty's copyright ownership. (Id. at 11.) Plaintiff argues that Beatty was his employee, with the result that he is the sole owner of the copyright. (Opp'n at 6-13.) He argues that Beatty registered the copyright without his knowledge or permission, and that he overcomes the registration's presumption of ownership by his showing that Beatty was his employee. (Id. at 13.)

Plaintiff's and Beatty's contradicting versions of events prevent this Court from determining whether Beatty exercised control over the production and whether her contributions are a source of the project's appeal. See Aalmuhammed, 202 F.3d at 1234. For example, both Plaintiff and Beatty state in their declarations that they wrote the initial proposal or treatment for the documentary. (Beatty Decl. ¶ 4; Brown Decl. ¶ 15.) Plaintiff and Beatty each assert that they controlled the production down to the level of, among other things, overseeing and conducting interviews, supervising the crew, and directing shoots. (Beatty Decl. ¶ 9; Brown Decl. ¶¶ 24-25, 27-29.) Additionally, as Plaintiff points out, it was Plaintiff who entered into the agreement with Iverson's management team to make the documentary, and

---

[1/]    The term also includes works expressly agreed in writing to be works made for hire, 17 U.S.C. § 101, but no such agreement existed here (Beatty Decl. ¶ 8).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-7666 PA (GJSx) | Date | November 9, 2017 |
|---|---|---|---|
| Title | Mark Brown v. Zatella Beatty, et al. | | |

that agreement does not mention Beatty or 214 Films. (Brown Decl. ¶¶ 19-20; see Brown Decl. Ex. 12.) Moreover, Plaintiff states that there was no partnership agreement or agreement to share profits or losses between himself and Beatty (Brown Decl. ¶ 27), and Defendants do not identify any objective manifestations of Plaintiff's and Beatty's intent to be coauthors, see Aalmuhammed, 202 F.3d at 1234. The Court cannot determine on the record before it whether Plaintiff and Beatty were joint authors in the Iverson project prior to 2008.

These same disputed issues of fact preclude the Court from determining whether Beatty was Plaintiff's employee. See Cmty. for Creative Non-Violence, 490 U.S. at 751-52 (stating that courts should "consider the hiring party's right to control the manner and means by which the product is accomplished"). Additionally, various relevant factors support each side. For example, Beatty did not receive tax forms or benefits from Plaintiff (Beatty Decl. ¶ 10; Schilken Suppl. Decl. Ex. A), but she had worked for Plaintiff for several years, and she held herself out in emails and documents as Plaintiff's assistant or as associated with his production company (Brown Decl. ¶¶ 3, 6; Brown Decl. Exs. 1, 2, 14). The Court therefore cannot determine on summary judgment whether Beatty's contributions were done as a work made for hire.

214 Films's copyright registration for Iverson (see Beatty Decl. ¶ 16; Beatty Decl. Ex. C), even if relevant to the unfinished film as it existed in 2008, does not alter this conclusion. Although a copyright registration raises a presumption of ownership, 17 U.S.C. § 410(c); Micro Star v. Formgen Inc., 154 F.3d 1107, 1110-11 (9th Cir. 1998), Plaintiff has rebutted that presumption, see Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc., 122 F.3d 1211, 1217 (9th Cir. 1997) ("To rebut the presumption, an infringement defendant must simply offer some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement.").

Finally, Plaintiff disputes that he indicated that he was "done" with the project and that he relinquished his rights. (Brown Decl. ¶ 37.) Defendants' passing statement that Plaintiff abandoned the project (Mot. at 1) fails to establish that Plaintiff surrendered his rights. See Marya v. Warner/Chappell Music, Inc., 131 F. Supp. 3d 975, 991-92 (C.D. Cal. 2015) (discussing requirements for abandonment).

Accordingly, Defendants are not entitled to summary judgment on Plaintiff's claim for copyright infringement. The Court therefore denies Defendants' request that the Court decline supplemental jurisdiction over Plaintiff's other claims. (See Mot. at 16-17.)

    **C.**    **Preemption Under the Copyright Act**

Defendants argue that Plaintiff's claims for conversion, unjust enrichment, unfair competition, and declaratory relief are preempted by the Copyright Act. (Mot. at 12-16.) Plaintiff did not address the issue of preemption in his opposition, although he did respond to other arguments about some of these claims. Despite Plaintiff's failure to address Defendants' preemption arguments, the Court considers their merits. See Cristobal v. Siegel, 26 F.3d 1488, 1494-95 (9th Cir. 1994) (stating that the movant has the burden of demonstrating its entitlement to summary judgment even if no opposition is filed).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 16-7666 PA (GJSx) | Date | November 9, 2017 |
| Title | Mark Brown v. Zatella Beatty, et al. | | |

The Copyright Act provides that "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . are governed exclusively by [the Copyright Act]" and that "no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State." 17 U.S.C. § 301(a). To determine whether a state-law claim is preempted, a court "must first determine whether the 'subject matter' of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103. Second, assuming that it does, [the court] must determine whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106 . . . ." Laws v. Sony Music Entm't, Inc., 448 F.3d 1134, 1137-38 (9th Cir. 2006) (footnotes omitted) (citing Downing v. Abercrombie & Fitch, 265 F.3d 994, 1003 (9th Cir. 2001)). Under the second prong, "[t]o survive preemption, the state cause of action must protect rights which are qualitatively different from the copyright rights. The state claim must have an extra element which changes the nature of the action." Id. at 1143 (quoting Del Madera Props. v. Rhodes & Gardner, 820 F.2d 973 (9th Cir. 1987), overruled on other grounds by Fogerty v. Fantasy, Inc., 510 U.S. 517, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994)).

Plaintiff's claims relate to his work on the Iverson project and Defendants' subsequent use thereof, which are within the subject matter of copyright. See 17 U.S.C. §§ 102(a)(6), 103(a). The Court proceeds to the second prong of the preemption test for each of the claims.

        1.      Plaintiff's Conversion Claim

Defendants argue that Plaintiff's conversion claim is premised on Beatty's license to Showtime to publicly perform his work, thus falling within copyright's preemptive scope. (Mot. at 13.)

"Conversion requires (1) the plaintiff's ownership or right to possession of a certain piece of property, (2) the defendant's conversion of the property by a wrongful act, and (3) damages." Ryoo Dental, Inc. v. Han, No. SACV 15-308-JLS (RNBx), 2015 WL 4208580, at *2 (C.D. Cal. July 9, 2015) (citing Firoozye v. Earthlink Network, 153 F. Supp. 2d 1115, 1129 (N.D. Cal. 2001)). "In determining whether conversion claims are preempted by the Copyright Act, courts distinguish conversion of intangible property from conversion of tangible property. . . . [W]here a plaintiff is only seeking damages from a defendant's reproduction of a work—and not the actual return of a physical piece of property—the claim is preempted." Id. at *2 (C.D. Cal. July 9, 2015) (internal quotation marks omitted).

In his conversion claim, Plaintiff alleges that Beatty "hijacked control and ownership over the Project by signing the Deal Memo Agreement with Showtime for a license to air the Project without the consent of Plaintiff . . . thereby converting the Project for her own benefit and gain." (FAC ¶¶ 47-48 (emphasis added).) Plaintiff bases his claim only on Beatty's alleged misappropriation of his intangible creative work, which is prohibited by the Copyright Act. See 17 U.S.C. § 106; see also Delsi v. Falk, 916 F. Supp. 985, 992 (C.D. Cal. 1996) (conversion claim preempted where it was premised on alleged wrongful use and distribution of plaintiff's work of authorship).

Accordingly, Defendants are entitled to summary judgment on Plaintiff's conversion claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-7666 PA (GJSx) | Date | November 9, 2017 |
|---|---|---|---|
| Title | Mark Brown v. Zatella Beatty, et al. | | |

    2.    <u>Plaintiff's Unjust Enrichment Claim</u>

    Defendants argue that Plaintiff's unjust enrichment claim is based only on Defendants' having received benefits from their unauthorized use of the project and that the only unauthorized use alleged is the Showtime license. (Mot. at 13-14.)

    "To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." <u>ESG Capital Partners, LP v. Stratos</u>, 828 F.3d 1023, 1039 (9th Cir. 2016) (citing <u>Lectrodryer v. SeoulBank</u>, 91 Cal. Rptr. 2d 881 (Ct. App. 2000)). "While a claim for unjust enrichment may require proof that a benefit was conferred on the defendant, where the unjust enrichment arises from defendants' unauthorized use of a copyrighted work, such an extra element does not qualitatively change the rights at issue . . . and does not avoid preemption." <u>Zito v. Steeplechase Films, Inc.</u>, 267 F. Supp. 2d 1022, 1027 (N.D. Cal. 2003).

    Plaintiff's unjust enrichment claim alleges that "Defendants have received benefits resulting from their unauthorized use of <u>the Project</u>" and "received and unjustly retained these benefits at Plaintiff's expense." (FAC ¶¶ 54-56 (emphasis added).) Plaintiff's is premised on Defendants' allegedly unauthorized profiting from his work, which is prohibited by the Copyright Act. <u>See</u> 17 U.S.C. § 106; <u>see also Zito</u>, 267 F. Supp. 2d at 1027 (claim preempted where it "[did] not implicate any facts or rights in addition to [the] plaintiff's copyrights").

    Importantly, Plaintiff's claim does not refer to the Agreement, which might support a claim that would not be preempted. <u>See</u> <u>Cadkin v. Loose</u>, No. SACV 08-1580 JVS (SHx), 2008 WL 11336390, at *3 (C.D. Cal. Apr. 24, 2008) (unjust enrichment claim not preempted where based on breach of contract). Defendants argue that Plaintiff attempted to expand the scope of his unjust enrichment claim beyond what was contemplated by the FAC by arguing this in his opposition. (Reply at 14, Docket No. 58; <u>see</u> Opp'n at 17-18.) Defendants argue that leave to amend should not be granted to allow Plaintiff to pursue this alternate theory. (Reply at 14-15.)

    When issues raised in opposition to a motion for summary judgment are outside the scope of the complaint, a district court should construe the matter raised as a request to amend the pleadings. <u>Desertrain v. City of Los Angeles</u>, 754 F.3d 1147, 1154 (9th Cir. 2014) (quoting <u>Apache Survival Coal. v. United States</u>, 21 F.3d 895, 910 (9th Cir. 1994)). Plaintiff did not act diligently in attempting to raise this alternate theory, which was, or should have been, known to Plaintiff when he filed his complaint. "[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings." <u>Updike v. Multnomah Cnty.</u>, 870 F.3d 939, 952 (9th Cir. 2017) (quoting <u>Wasco Prods., Inc. v. Southwall Techs., Inc.</u>, 435 F.3d 989, 992 (9th Cir. 2006)). Moreover, "[f]utility alone can justify a court's refusal to grant leave to amend." <u>Novak v. United States</u>, 795 F.3d 1012, 1020 (9th Cir. 2015) (citing <u>Bonin v. Calderon</u>, 59 F.3d 815, 845 (9th Cir. 1995)). Amendment would be futile here because under California law, there can be no unjust enrichment claim where there is a valid contract covering the same subject matter, <u>see</u> <u>Rutherford Holdings, LLC v. Plaza Del Rey</u>, 166 Cal. Rptr. 3d 864, 872-73 (Ct. App. 2014), and Plaintiff does not contend that the Agreement is invalid or unenforceable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-7666 PA (GJSx) | Date | November 9, 2017 |
|---|---|---|---|
| Title | Mark Brown v. Zatella Beatty, et al. | | |

Accordingly, Defendants are entitled to summary judgment on Plaintiff's unjust enrichment claim. Because the claim is preempted, the Court does not address Defendants' alternative argument that unjust enrichment cannot be asserted as a stand-alone claim. (See Mot. at 17.)

   3. Plaintiff's Unfair Competition Claim

Defendants argue that Plaintiff's claim under California's Unfair Competition Law ("UCL") is preempted to the extent it is based on allegations of copyright infringement, conversion, or misappropriation. Defendants argue that the claim cannot be based on the alleged breach of a "Verbal Agreement" because the FAC does not elsewhere allege any such agreement. (Mot. at 14-15.)

Defendants are correct that the FAC's only reference to a verbal agreement is in this claim. (FAC ¶ 59.) However, it appears that this reference was in error, and Plaintiff intended to refer to the Agreement, which is the only agreement discussed in the FAC. (See FAC ¶ 58 (incorporating other allegations of the FAC).) The Court considers the claim subject to that understanding. See Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

"California's Unfair Competition Law prohibits 'any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.' . . . In prohibiting 'any unlawful' business practice, the UCL 'borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.'" Levitt v. Yelp! Inc., 765 F.3d 1123, 1129-30 (9th Cir. 2014) (first quoting Cal. Bus. & Prof. Code § 17200; and then quoting Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 973 P.2d 527, 539-40 (1999)). "[W]here the alleged improper business activity is the act of copyright infringement, the claim is preempted." Wild v. NBC Universal, Inc., 788 F. Supp. 2d 1083, 1111 (C.D. Cal. 2011) (citing Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1152 (9th Cir. 2008); Kodadek v. MTV Networks, Inc., 152 F.3d 1209, 1213 (9th Cir. 1998)).

Plaintiff premises his UCL claim on Defendants' "unlawful, unfair and fraudulent business practices" including, "but . . . not limited to, breach of the Verbal Agreement, breach of the covenant of good faith and fair dealing implied in such agreement, conversion, misappropriation, and copyright infringement." (FAC ¶ 59.) Plaintiff's UCL claim is preempted to the extent it is based on the use of his work. See Wild, 788 F. Supp. 2d at 1111. But the UCL claim also is based on the alleged breach of contract, which provides a valid basis for a UCL claim and avoids preemption. See Sybersound Records, 517 F.3d at 1152 (UCL claim may be based on breach of contract); Montz v. Pilgrim Films & Television, Inc., 649 F.3d 975, 980 (9th Cir. 2011) ("Contract claims generally survive preemption . . . .").

Accordingly, Defendants are not entitled to summary judgment on Plaintiff's UCL claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-7666 PA (GJSx) | Date | November 9, 2017 |
|---|---|---|---|
| Title | Mark Brown v. Zatella Beatty, et al. | | |

    4.    <u>Plaintiff's Declaratory Relief Claim</u>

    Defendants argue that because Plaintiff merely seeks a declaration that Defendants have no right in the Iverson project, the claim is preempted. (Mot. at 15-16.)

    In his claim for declaratory relief, Plaintiff alleges that "[a]n actual controversy has arisen and now exists between Plaintiff and Defendants concerning their respective rights and duties arising out of the business relationship between Plaintiff and Defendants." (FAC ¶ 85.) Plaintiff "contends that Defendants do not have any right to use, sell, alienate or enter into a licensing agreement with respect to the Project as all ownership rights to the Project belong to Plaintiff." (<u>Id.</u> ¶ 86.) Plaintiff seeks, among other things, "a judicial declaration and determination that Defendants have no right to any ownership interest in the Project." (<u>Id.</u> ¶ 88; <u>see also</u> <u>id.</u> ¶ 87.)

    Plaintiff's declaratory relief claim relates to his allegations of ownership of material that either was used in or became <u>Iverson</u>, not infringement. The claim is not preempted. <u>See</u> <u>Dead Kennedys v. Biafra</u>, 37 F. Supp. 2d 1151, 1154 (N.D. Cal. 1999) (declaratory relief claim not preempted because it "seeks resolution of the parties' respective rights and duties. Ownership and title rights are matters of common-law and do not arise under the Copyright Act." (citing <u>Oddo</u>, 743 F.2d at 633)). The claim also refers to the parties' "business relationship," apparently invoking the Agreement, which also avoids preemption. <u>See</u> <u>Burtscher v. Moore</u>, No. CV 11-02309 DMG (JEMx), 2013 WL 12122230, at *13 (C.D. Cal. Feb. 7, 2013) (declaratory relief claim based on breach of contract not preempted).

    Accordingly, Defendants are not entitled to summary judgment on Plaintiff's declaratory relief claim.

    **D.**    **Breach of Written Contract**

    Defendants argue that Plaintiff's breach-of-contract claim fails because Plaintiff cannot establish his performance or excuse for his nonperformance. (Mot. at 17-19.) Specifically, Defendants argue that Plaintiff himself breached the Agreement by contacting Tollin, and that his performance was not excused by Beatty's nonpayment of the remaining money owed because there was no deadline for payment. (<u>Id.</u> at 18-19.) Defendants also note that Plaintiff did not make a demand for payment. (<u>Id.</u> at 19.) Plaintiff counters that Beatty breached the agreement by failing to pay the remaining money within a reasonable amount of time, which here was within the Showtime license period. (Opp'n at 14-15.)

    "A cause of action for damages for breach of contract is comprised of the following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." <u>Daniels v. Select Portfolio Servicing, Inc.</u>, 201 Cal. Rptr. 3d 390, 412 (Ct. App. 2016) (quoting <u>Careau & Co. v. Sec. Pac. Bus. Credit, Inc.</u>, 272 Cal. Rptr. 387, 395 (Ct. App. 1990)). "When a party's failure to perform a contractual obligation constitutes a material breach of the contract, the other party may be discharged from its duty to perform under the contract." <u>Brown v. Grimes</u>, 120 Cal. Rptr. 3d 893, 902-03 (Ct. App. 2011).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-7666 PA (GJSx) | Date | November 9, 2017 |
|---|---|---|---|
| Title | Mark Brown v. Zatella Beatty, et al. | | |

      The Agreement states that there would be "[n]o discussion with Mike Tollin now and forever" (Beatty Decl. Ex. D; Brown Decl. Ex. 20), and Plaintiff does not dispute that he contacted Tollin. Defendants are entitled to summary judgment only if Beatty had not already breached the Agreement prior to then by failing to pay Plaintiff the remaining money owed to him.

      The Agreement did not specify a time for performance. (Beatty Decl. ¶ 18; Brown Decl. ¶¶ 52-53; see Beatty Decl. Ex. D; Brown Decl. Ex. 20.) "If no time is specified for the performance of an act required to be performed, a reasonable time is allowed. If the act is in its nature capable of being done instantly – as, for example, if it consists in the payment of money only – it must be performed immediately upon the thing to be done being exactly ascertained." Cal. Civil Code § 1657. What is a reasonable time is a question of fact that depends on the particular circumstances of the case. See Eidsmore v. RBB, Inc., 30 Cal. Rptr. 2d 357, 363 (Ct. App. 1994). Defendants rely only on the omission of any deadline, and they do not explain why it is reasonable for Beatty not to have paid Plaintiff two years after the Agreement was made. (See Mot. at 18-19.)

      Plaintiff's apparent failure to make a demand for payment is not fatal to the claim. (Beatty Decl. ¶ 18; see Pl.'s Statement of Genuine Disputes ¶ 36, Docket No. 56.) Generally, "[w]here no time is specified for performance, a person who has promised to do an act in the future and who has the ability to perform does not violate his agreement unless and until a demand for performance is made and performance is refused." Leonard v. Rose, 422 P.2d 604, 607 (Cal. 1967). But a formal demand is not always required, and in some circumstances the filing of a lawsuit may satisfy the requirement. See Heinlen v. Martin, 53 Cal. 321, 345-46 (1879); Roadman v. Traeger, 43 P.2d 564, 564 (Ct. App. 1935). The Court notes that Plaintiff did not contact Tollin until nearly a year after commencing this action. If a reasonable time for Beatty to pay the remaining money owed terminated prior to Plaintiff's filing of this lawsuit, then Plaintiff was excused from his promise not to contact Tollin.

      Accordingly, Defendants are not entitled to summary judgment on Plaintiff's breach-of-contract claim.

      **E.    Breach of the Implied Covenant of Good Faith and Fair Dealing**

      Defendants argue that Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is duplicative of Plaintiff's breach-of-contract claim because it simply incorporates by reference the breach-of-contract allegations and does not request any different relief. (Mot. at 19.) Plaintiff argues that the implied covenant claim "is based on conduct of Defendant outside of the four corners of the [Agreement] itself," asserting that Defendants induced him to enter into the Agreement without ever intending to perform. (Opp'n at 16.)

      "The law implies in every contract . . . a covenant of good faith and fair dealing. The implied promise requires each contracting party to refrain from doing anything to injure the right of the other to receive the agreement's benefits." Wilson v. 21st Century Ins. Co., 171 P.3d 1082, 1086-87 (Cal. 2007) (internal quotation marks omitted). "A breach of the implied covenant of good faith and fair dealing

Case 2:16-cv-07666-PA-GJS Document 63 Filed 11/09/17 Page 12 of 13 Page ID #:646

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-7666 PA (GJSx) | Date | November 9, 2017 |
|---|---|---|---|
| Title | Mark Brown v. Zatella Beatty, et al. | | |

involves something beyond breach of the contractual duty itself . . . ." Careau & Co., 272 Cal. Rptr. at 399 (internal quotation marks omitted). "[A]llegations which assert such a claim must show that the conduct of the defendant . . . demonstrates a failure or refusal to discharge contractual responsibilities, prompted . . . by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement. Just what conduct will meet this criteria must be determined on a case by case basis and will depend on the contractual purposes and reasonably justified expectations of the parties." Id. at 399-400.

Plaintiff's implied covenant claim incorporates Plaintiff's allegations of Defendants' other acts. (FAC ¶ 73.) Although Beatty's mere breach of the Agreement would not establish breach of the implied covenant, circumstantial evidence viewed in a light most favorable to Plaintiff supports an inference of a conscious and deliberate act that frustrated the Agreement. Plaintiff contends that Beatty entered into the Agreement to protect the Showtime license (Brown Decl. ¶¶ 54, 56), and Beatty admits that she knew that Plaintiff's accusations of theft could impact the license (Beatty Decl. ¶ 17). Beatty's nonpayment in combination with the timing of events lends some support to Plaintiff's theory that Beatty was only buying time until the license expired. (Opp'n at 16; Brown Decl. ¶ 56.)

Accordingly, Defendants are not entitled to summary judgment on Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.

  **F. Promissory Estoppel**

Defendants argue that Plaintiff's promissory estoppel claim fails because there was a written contract. (Mot. at 19-20.) Plaintiff argues that he has a promissory estoppel claim in the event that his contract claim fails. (Opp'n at 15.)

"The required elements for promissory estoppel in California are . . . (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) his reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." Laks v. Coast Fed. Sav. & Loan Ass'n, 131 Cal. Rptr. 836, 839 (Ct. App. 1976). "A cause of action for promissory estoppel is a claim in equity that substitutes reliance on a promise for consideration . . . . If actual consideration was given by the promisee, promissory estoppel does not apply." Fleet v. Bank of Am., N.A., 178 Cal. Rptr. 3d 18, 26-27 (Ct. App. 2014).

For his breach-of-contract claim, Plaintiff alleges that "[i]n or about July 2015, . . . the Parties came to a preliminary agreement in which [Plaintiff] would receive a 'good faith' $25,000 down payment on a minimum payment of $85,000 that was due to [him] along with certain equity interests . . . . The [Agreement] was supported by adequate consideration and the essential terms were known to all parties." (FAC ¶ 66.) Plaintiff's promissory estoppel claim is based on the same mutual promises laid out in the Agreement and the same alleged breach thereof, although Plaintiff omits any reference to the Agreement. (See FAC ¶¶ 75-80.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-7666 PA (GJSx) | Date | November 9, 2017 |
|---|---|---|---|
| Title | Mark Brown v. Zatella Beatty, et al. | | |

It is true that a plaintiff may plead breach-of-contract and promissory estoppel claims in the alternative. Fleet, 178 Cal. Rptr. 3d at 27. However, Plaintiff does not allege in the FAC, or argue in his opposition, that the Agreement is not valid. The evidence before the Court shows a valid written agreement supported by consideration. As a result, Plaintiff's promissory estoppel claim fails. See Avidity Partners, LLC v. State, 165 Cal. Rptr. 3d 299, 323-24 (Ct. App. 2013) (affirming summary judgment for defendant where claimed reliance was bargained-for consideration under an agreement).

Because the FAC does not suggest any intention to argue that the Agreement is invalid, Plaintiff may not now pursue such a theory. See Maples v. SolarWinds, Inc., 50 F. Supp. 3d 1221, 1232 (N.D. Cal. 2014) ("On a motion for summary judgment, the plaintiff's allegations and theories of liability are confined to those found in the operative complaint." (citing Coleman v. Quaker Oats Co., 232 F.3d 1271, 1292 (9th Cir. 2000)); see also Pickern v. Pier 1 Imps. (U.S.), Inc., 457 F.3d 963, 968-69 (9th Cir. 2006) (district court did not err in granting summary judgment against plaintiff where plaintiff first provided factual allegations in opposition to summary judgment).

Accordingly, Defendants are entitled to summary judgment on Plaintiff's promissory estoppel claim.

### Conclusion

For all of the foregoing reasons, Defendants' motion for summary judgment is granted in part and denied in part. Specifically, the Court grants the motion with respect to the FAC's claims for conversion, unjust enrichment, and promissory estoppel. The Court denies the motion with respect to the FAC's claims for copyright infringement, unfair competition, declaratory relief, breach of contract, and breach of the implied covenant of good faith and fair dealing.

IT IS SO ORDERED.